UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jose Adames et al.,

                              Plaintiff,

                                                    **Hon. Hugh B. Scott**

                                                    12CV569S

                    v.                              **Order and
                                                    Report &
                                                    Recommendation**

G.B.Restaurants Inc. et al. ,

                              Defendant.

_____

        Before the Court are the following motions: plaintiff's motion to strike (Docket No. 15);

plaintiff's motion for sanctions (Docket No. 43); plaintiff's motion for summary judgment

(Docket No. 45); defendants' motion for relief from unanswered admissions (Docket No. 56);

and plaintiff's supplemental motion for sanctions (Docket No. 61).


                              **Background**

        The plaintiffs, Jose Adames and Sally Irizarry bring this action individually and as

parents of Tatyana Adames (referred to collectively as "Adames") seeking damages relating to

the personal injuries allegedly suffered by Tatyana (an infant) when a cup of coffee was spilled

on her at the Denny's Restaurant located in Angola, New York.  Named as defendants are G. B.

Restaurants, Inc. ("G.B.") and Top Line Restaurants, Inc. ("Top Line").  The plaintiffs allege that

Tatyana's injuries were due to the negligence of the defendants' employees. (Docket No. 1

                              1

[Count 1]).  Jose Adames and Sally Irizarry also assert that they have also been injured due to the negligence of the defendants' employee in that, (a) they have been forced to incur expenses to deal with the medical care of Tatyana; (b) they have and will suffer great emotional injury as a result of being in the zone of danger and watching the injury to Tatyana; and (c) they have and will continue to suffer the loss of their daughter's services. (Docket No. 1 [Count 2]).

**Motion to Strike**

The plaintiffs seek to strike the defendants' Second, Third and Fourth Affirmative Defenses, as well as the defendants' Cross-Claim[1]. (Docket No. 15).

The defendants' Second Affirmative Defense asserts:

> Upon information and belief, if the plaintiffs sustained any injuries or damages as alleged in the complaint, such injuries and damages were caused in whole or in part or were contributed to by plaintiffs' own culpable conduct, contributory negligence and want of care, without any culpable conduct, negligence or want of care on the part of defendants, and the amount of damages recoverable by plaintiffs, if any, should be diminished in whole or in part in proportion to plaintiffs' culpable conduct.

(Docket No. 11 qt ¶ 9).

The defendants' Third Affirmative Defense states:

> Upon information and belief, if the plaintiffs sustained any injuries or damages, they assumed the risk inherent in the activity in which they were then engaged.

(Docket No. 11 at ¶ 10).

The defendants' Fourth Affirmative Defense alleges:

---

[1]  The defendants have withdrawn the cross-claim asserted against Jose Adames and Sally Irizarry. (Docket No. 23 at page 6).  Thus, this portion of the motion to strike is moot.

Upon information and belief, the plaintiffs have failed to mitigate
their injuries and damages.

(Docket No. 11 at ¶ 11).

Affirmative Defenses

The plaintiff argues that the defendants have failed to include factual averments in

support of these affirmative defenses. Generally, Rule 12(f)[2] of the Federal Rules of Civil

Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "A motion to strike an

affirmative defense under Rule 12(f) ... for legal insufficiency is not favored." William Z. Salcer,

Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir.1984), vacated on other

grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). Such a motion "will not be

granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts

which could be proved in support of the defense.' " Id. (quoting Durham Indus., Inc. v. N. River

Ins. Co., 482 F.Supp. 910, 913 (S.D.N.Y.1979)). "Three prerequisites must be satisfied before a

court may grant a motion to strike defenses." F.D.I. C. v. Pelletreau & Pelletreau, 965 F.Supp.

381, 389 (E.D.N.Y.1997), a  plaintiff must show that: "(1) there is no question of fact which

might allow the defense to succeed; (2) there is no question of law which might allow the defense

to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." McCaffery v.

McCaffery, 2012 WL 3260299 E.D.N.Y.,2012 quoting Houston v. Manheim–New York, 2010

WL 744119, at *3 (S.D.N.Y. 2010) (citing SEC v. McCaskey, 56 F.Supp.2d 323, 326

---

[2]   The plaintiff cites to Rule 12(e) as the setting forth the standard for striking an
affirmative defense.  (Docket No. 16 at page 5). However, Rule 12(e), entitled "Motion for a
More Definite Statement" allows a party to seek "a more definite statement of a pleading to
which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot
reasonably prepare a response."  The plaintiff has not requested a more definite statement under
Rule 12(e), but seeks dismissal which is governed by Rule 12(f).

(S.D.N.Y.1999)).[3]

The plaintiff's motion is predicated on the argument that the pleading requirement for an affirmative defense is governed by Rule 8(a)(2) and that the assertion of an affirmative defense must be accompanied by sufficient factual allegations as to satisfy the plausibility standard under Bell v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). (Docket No. 16 at page 6).   While at least one district court in this Circuit has held that the pleading standard under Twombly and Iqbal applies to a motion to strike an affirmative defense, Tracy v. NVR, Inc., 2009 WL 3153150 (W.D.N.Y.,2009)(Payson, M.J.); a more recent decision has held that a motion to strike an affirmative defense is not governed by the Twombly/Iqbal standard.  Petroci v. Transworld Systems, Inc., 2012 WL 5464597 (W.D.N.Y.,2012)(McCarthy, M.J.). Various district courts have noted the contrasting decisions on this issue.  See Petroci, 2012 WL 5464597 at *2 citing Godson v. Eltman, Eltman & Cooper, P.C., 2012 WL 3964750 at *2 (W.D.N.Y.2012) (Skretny, J.). It appears that neither the Second Circuit, nor any other Circuit, has yet ruled on the issue.

The Court agrees with the holding in Petroci, that the standard to apply with respect to a motion to strike an affirmative defense has not been replaced by the pleading standard set forth in Twombly/Iqbal. Initially, several courts have held that Twombly and Iqbal concerned the pleading standard with respect to a claim, which pursuant to Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," but that those cases did

---

[3]   With one exception, the plaintiff's primary argument relates to the defendants' allegedly insufficient pleading of the affirmative defenses, not to the substantive merit of the defenses. The plaintiff argues that New York law proscribes the imputation of any negligence on the part of parents to the injury claims of their infant. (Docket No. 16 at page 11).   The defendants respond that the asserted affirmative defenses pertain only to the conduct of the parents as it relates to the claims asserted by the parents, separate and distinct from the claims asserted on behalf of the infant. (Docket No. 23 at page 1-2).

not concern the pleading of an affirmative defense which is governed by Rules 8 (b) and 8(c).

Rule 8(b) provides that a party shall "state in short and plain terms its defenses to each claim;"

while Rule 8(c) lists the various defenses which must be "affirmatively stated." Petroci, 2012

WL 5464597 at *2 ("Rule 8(a)(2) applies only to a 'pleading that states a claim for relief', not to

a defense.); Gonzalez v. Midland Credit Management, Inc., 2013 WL 5970721 (M.D.Fla. 2013)

(While Rule 8(a)(2) requires a pleading stating a claim for relief to include "a short and plain

statement of the claim showing that the pleader is entitled to relief," Rules 8(b) and 8(c) only

require parties to state their defenses."). Moreover, the arguments presented by the plaintiff in

this instant matter are similar to those rejected in Petroci. In this regard, the Court in Petroci

stated:

> Plaintiff argues that "[i]t is unfair to ... require a Plaintiff to
> specifically plead the factual basis upon which their claims are
> based, while at the same time not imposing a similar requirement
> on a defendant with respect to their defenses". ... I disagree.
> "Pleading standards that account for the differences between the
> pleading of claims and defenses make sense. Knowledge at the
> pleading stage is often asymmetrical, disproportionately favoring
> the pleading of a claim by a plaintiff who has had the opportunity
> to time its filing. While the plaintiff often can conduct an
> investigation before filing the complaint to ensure its allegations
> are adequately supported, the defendant must respond quickly after
> being served.... [B]ecause of these differences, Rules 8(b) and 8(c)
> do not require a court to subject defenses pleaded by a defendant to
> the same stringent plausibility standards that Iqbal and Twombly
> demand of claims for relief under Rule 8(a)." Odyssey Imaging,
> LLC v. Cardiology Associates of Johnston, LLC, 752 F.Supp.2d
> 721, 726 (W.D.Va.2010).
>
> In addition to Twombly and Iqbal, plaintiff cites Schechter v.
> Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir.1996)[4]
> for the proposition that "affirmative defenses that contain only

---

[4] The plaintiff in the instant case also cites to Schechter. (Docket No. 16 at page 7). For the reasons set forth in Petroci, Schechter does not govern the analysis as to the sufficiency of the pleading of an affirmative defense under Rule 8.

'bald assertions' without supporting facts should be stricken." However, in <u>Schechter</u> the defendant moved pursuant to Rule 12(c) for judgment on the pleadings based upon its affirmative defense, and the court "found that a bare affirmative defense was insufficient in relation to a motion for judgment on the pleadings. Thus, it is unclear whether the Second Circuit meant that such bare-bones defenses have no efficacy at all, or simply that they have no efficacy to support a motion for judgment on the pleadings." <u>Godson</u>, 2012 WL 3964750 at *3 (emphasis in original). Therefore, I do not find <u>Schechter</u> to be controlling in this case.

It has been suggested that "applying the same pleading requirements to defendants should not stymie the presentation of a vigorous defense, because ... a defendant may seek leave to amend its answers to assert defenses based on facts that become known during discovery". <u>Racick v. Dominion Law Associates</u>, 270 F.R.D. 228, 234 (E.D.N.C.2010). However, this reasoning begs the question of whether discovery would even be available concerning an unpleaded affirmative defense, since the "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case". <u>United States For and on Behalf of the Maritime Administration v. Continental Illinois National Bank and Trust Co. of Chicago</u>, 889 F.2d 1248, 1253 (2d Cir.1989) (emphasis added); Rule 26(b)(1) ("the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

<u>Petroci</u>,  2012 WL 5464597 at *2-3.

The affirmative defenses asserted by the defendants in this case are set forth in a concise

manner that has traditionally been found to be acceptable.  Even after <u>Twombly</u> and <u>Iqbal</u>, most

districts have held that providing fair notice of an affirmative defense is sufficient. See i.e.

<u>Cordero v. Voltaire</u>, LLC, 2013 WL 6415667 (W.D.Tex.,2013)(Because the Fifth Circuit has

continued to apply the "fair notice" standard even after <u>Twombly</u>, the Court found that the "fair

notice" standard continues to apply to motions to strike an affirmative defense.); <u>Baustian v.</u>

<u>Fifth Third Bank</u>, 2013 WL 6243857 (E.D.Mo.,2013)(An affirmative defense may be pleaded in

general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as

long as it gives the plaintiff fair notice of the nature of the defense.); F.D.I.C. v. Jacobs, 2013 WL 6410022 (D.Nev.,2013)(As for insufficiency, affirmative defenses need only be pled to the [fair notice] standard, not to the Twombly/Iqbal standard.).

Upon review of the affirmative defenses, the Court finds that they are adequately plead so as to provide the plaintiff with notice of the asserted defense.  The plaintiff is certainly entitled to inquire as to the basis and scope of these defenses during the discovery phase of this lawsuit.


**Motion for Sanctions**

The plaintiffs contend that the defendants failed to produce discovery in compliance with this Court's July 23, 2013 Order, and that the failure to do so required the plaintiffs to incur costs to re-depose certain witnesses.  (Docket No. 43). Pursuant to Rule 37, the plaintiffs seek recovery of the costs incurred in connection with the additional depositions.[5]  In addition, the plaintiffs assert that the defendants failed to respond to a Request for Admissions, and thus, the plaintiffs seek a court order deeming that the matters included in the Request for Admissions be deemed to be established for purposes of this action pursuant to Rule 36(a)(3). (Docket No. 43 at ¶ 19).[6]

Rule 37 of the Federal Rule of Civil Procedure permits a district court to impose a range of sanctions upon a party for failing to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). More severe sanctions, such as preclusion or dismissal, may be imposed when the failure to comply with a court order was due to willfulness, bad faith, or fault on the part of the party refusing discovery. See, e.g.,

---

[5]   The plaintiffs also sought that the Court order the defendants to produce a corporate designee for deposition on August 22, 2013. (Docket No. 43 at page 8). It appears that the deposition of the defendants' corporate designee has already taken place, and thus, this request is moot.

[6]   Because this issue is intertwined with the plaintiffs' motion for summary judgment and the defendants' motion for relief from unanswered admissions, this aspect of the plaintiff's motion for sanctions is discussed below.

Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir.1995); Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir.1988). In lieu of, or in addition to the sanctions listed in Rule 37(b)(2)(A), the court can assess attorneys fees and reasonable expenses, unless the court finds that the failure to obey the order was substantially justified or other circumstances make the award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C). Similarly, Rule 16(f) provides, that if a party or attorney fails to obey a scheduling or other pretrial order, the court, on motion or on its own, "may issue any just orders" including those authorized by Rule 37(b)(2)(A), and/or may impose attorneys fees and costs under essentially the same standards as Rule 37(b)(2)(C). Fed. R. Civ. P. 16(f).  Further, Rule 37(d)(3) provides for the imposition of reasonable attorneys fees and expenses caused by the failure of a party to attend a deposition or respond to discovery requests.

There does not appear to be significant dispute regarding the relevant timeline of events underlying the plaintiffs' motion for sanctions. On June 10, 2013, Plaintiffs filed a Motion Compelling Discovery under Rule 37(a)(3)(8) seeking production of discovery prior to the depositions of defendants' employees, Jill Herlan and Densil Wilson. (Docket No. 36). Subsequently, counsel for the parties conferred and agreed to proceed with the depositions on June 17, 2013.  On June 17, 2013, however, neither Herlan nor Wilson appeared for deposition. The depositions of the adult plaintiffs was conducted on June 17, 2013. At that time, counsel for the parties again conferred regarding the outstanding discovery, the depositions of Herlan and Wilson, and a corporate designee witness.  As a result of those consultations, Plaintiffs scheduled the depositions of Herlan, Wilson and a corporate designee or designees for Thursday, July 25, 2013. The plaintiffs continued to demand that the requested discovery be produced sufficiently in advance of those depositions. On July 22, 2013,counsel for the defendants advised that he expected to be able to produce the discovery responses by 10:00 a.m. on Wednesday, July 24, 2013 and agreed that such a deadline be incorporated into an Order of Court. It was also agreed that a corporate witness

would be designated for deposition on July 25, 2013.

Consequently, on July 22, 2103, the plaintiffs filed a Supplement to their motion to compel seeking an Order compelling Defendants to produce provide answers to certain specified interrogatories, and respond to certain document requests on or prior to July 24, 2013 at 10:00 a.m. "or suffer sanctions." (Docket No. 40).  On the July 23, 2013, defendants' counsel advised the plaintiffs' and the Court that he had subsequently learned that his corporate designee witness was unavailable on July 25, 2013 and that he would have the document production on July 24, but not by 10 a.m. as previously agreed.  Thus, the defendants requested an extension of 30 days to produce their designated corporate witness. (Docket No. 41).  The plaintiffs represent that they agreed to proceed with the depositions of Herlan and Wilson on July 25, 2013, and further agreed to a 30 day extension with respect to the defendants' corporate designee, so long as the documents for the respective depositions were produced in a timely fashion.  The plaintiffs assert that they advised the defendants that the plaintiffs would seek sanctions and reserve the right to recall Herlan and Wilson should a later review of the documents indicate that further questioning was necessary." (Docket No. 43 at ¶ 10).  On July 23, 2013 the Court entered an Order providing, inter alia: "The defendants are directed to produce the discovery identified in Docket No. 40, as  agreed upon, as soon as practicable so that it may be utilized during the scheduled depositions."  (Docket No. 42).  According to the plaintiffs, at 5:20p.m. on July 24, the defendants still had not produced the discovery relating to the depositions of Herlan and Wilson. The plaintiffs' counsel sent an e-mail to the defendants' stating:

> I intend to go forward with the two fact witnesses tomorrow with the following conditions: If you get the documents before the depositions begin, print 2 copies and bring them to the depositions. If the quantity is small and I can thoroughly review them without holding up the witnesses, I think I should be OK. If the quantity is large and I can't thoroughly review without holding up the witnesses, OR if the documents are not produced, I will take the depositions but reserve the right to recall them if, after review, I find there are questions that I need to have answered from either or both of them. I will seek a contempt order from the Court for fees and expenses in making that

second trip. Of course, this assumes that the documents are produced
sometime tomorrow.

(Docket No. 43 at ¶ 12; email attached as Exhibit 1 ).  The plaintiffs assert that at 9:46 p.m. on July

24, 2013, the defendants' provided a response to the document requests, however, some of the

requested documents, including documents related to employee training and the defendants'

insurance policy were not produced (Docket No. 43 at ¶ 13).  The plaintiffs proceeded with the

depositions of Herlan and Wilson as scheduled, but reserving the right to recall them.  In their

depositions, both Herlan (the waitress who served the coffee) and Wilson (the general manager of the

restaurant) testified to having training materials provided to them. Wilson testified to training

"books." Wilson also identified daily records kept of the temperature of the coffee being served.  On

July 26, 2013, the plaintiffs' sent a follow up letter seeking the documents identified in the

depositions, specifically requesting: the insurance policy; the training books referenced by Mr.

Wilson; and the coffee temperature records referenced by Mr. Wilson (limited to the day of

the accident). (Docket No. 43 at ¶ 16; and Exhibit 4).  On July 30, 2013, the defendants produced

two Top Line Restaurants, Inc. documents entitled "Safety and Service Considerations- Hot

Beverage  Service." The plaintiffs determined that both Wilson and  Herlan needed to be recalled

and questioned on the standards set forth in those documents.  The plaintiff notes that the requested

insurance policy had still not been produced at that time.  (Docket No. 43 at ¶ 17).

   The supplemental depositions of Herlan and Wilson took place on August 30, 2013, along

with the deposition of Robert Moriarty, the defendants' corporate designee. (Docket No. 61 at ¶4).

Jill Younkers, Esq., the plaintiffs' local counsel, conducted these depositions.  The plaintiffs' have

submitted an invoice in the amount of $3117.70, for attorneys fees and costs incurred in conducting

the supplemental depositions. (Docket No. 61-1)  Yonkers' invoice includes the following time

entries: 2.80 hours on August 28, 2013, preparing an outline for the depositions of Herlan, Wilson

and Moriarty; 3.20 hours on August 29, 2013 to analyze the depositions of Herlan and Wilson,

prepare for the follow-up depositions and the deposition of a corporate witness, and to analyze documents relating to coffee temperature, safety manuals, food handling and dealing with emergencies; 6.40 hours on August 30, 2013 to prepare for deposition of corporate witness, analyze the complaint and notices to admit,[7] prepare for all three depositions and confer with John McCandless, Esq., the plaintiffs' primary counsel.   In total, Yonkers' invoice seeks payment for 12.40 hours at $250.00 per hour, along with $17.70 in copying costs. (Docket No. 61-1).

 As noted above, the defendants do not contest the substance of the timeline underlying the instant motion for sanctions.  The defendants do not assert that the supplemental depositions of Herlan and Wilson were unwarranted notwithstanding the late production of the training materials. (Docket No. 63 at ¶ 4).[8]  Instead, the defendants argue that it was not necessary to have Yonkers conduct the depositions and that much of the time charged by Yonkers[9] was to familiarize herself with the entirety of the case. (Docket No. 63 at ¶14).  The defendants assert that the plaintiffs have not demonstrated that McCandless was unavailable for the supplemental depositions. (Docket No. 63 at ¶ 11).

 Based upon the record before the Court, the plaintiffs have demonstrated that the

---

 [7]  The defendants assert that the papers containing the plaintiff's allegations in support of the motion for sanctions is neither "sworn to or subscribed under the penalty of perjury" and thus, is insufficient. (Docket No. 63 at ¶ 6). The defendants do not cite to any authority in support of this argument.  The Court notes that the document is signed by the plaintiffs' counsel and that the defendants' do not dispute any of the substantive factual allegations contained therein. The defendants also assert that the plaintiffs have failed to allege that the invoice for Yonker's services has already been paid.  (Docket No. 63 at ¶ 7). Again, the defendants do not provide any authority in support of the contention that an award of fees under Rule 37(d) cannot be made until the costs incurred have already been paid.

 [8]  The defendants note that the coffee temperature documents were first identified at Wilson's initial deposition and were requested thereafter. Thus, the production of the coffee temperature documents were not late and did not cause the need for the supplemental depositions. (Docket No. 63 at ¶ 18).

 [9]  The defendants do not take issue with the hourly rate charged by Yonkers for the work performed in this case.

supplemental depositions of Herlan and Wilson would not have been required but for the failure of

the defendants to produce the training documents which were part of the plaintiffs' original

document request and which were directed to be produced pursuant to this Court's July 23, 2013

Order.  The defendants have not articulated any substantial justification for the failure to produce

these documents prior to the depositions of Herlan and Wilson.  The Court finds that the award of

attorneys fees incurred by the plaintiffs in connection with the supplemental depositions of Herlan

and Wilson is warranted in this case.  The main objections articulated by the defendants in response

to the fee application are that Yonkers had to expend some time becoming familiar with the case (as

opposed to McCandless, who was already familiar) and that the fee application includes fees

incurred in connection with the deposition of Moriarty, the defendants' corporate designee.  The

argument that McCandless could have conducted the depositions more efficiently than Yonkers is

tempered somewhat by the fact that McCandless, who is located in Erie, Pennsylvania, would have

incurred additional travel expenses not incurred by Yonkers.  In any event, it was not unreasonable

for plaintiffs' lead attorney to request that local counsel conduct depositions in this matter.

Notwithstanding the limited nature of the supplemental depositions of Herlan and Wilson, it was

reasonable for Yonkers to spend some time becoming familiar with the general issues of the case for

context, and not limit her review solely to the training documents.  However, the fee application

should be reduced in light of the fact that it includes the costs associated with the deposition of

Moriarty. Yonkers' fee application does not separate the time that she spent preparing for the

deposition of Herlan and Wilson from the time she spent preparing for the deposition of Moriarty.

Although the deposition of Moriarty was delayed, the plaintiffs have not demonstrated that they

incurred additional costs due to the delay.  The Court notes that the two depositions of Herlan and

Wilson were limited in nature (compared to the deposition of Moriarty, who was being deposed in

the first instance).  In light of the above, the Court reduces the amount of attorneys' fees to be

awarded by 50 percent, or $1,550.00.  The Court finds that the $17.70 charge for photocopying is

reasonable. Thus, the Court directs that the defendants pay the plaintiffs $1,517.70 in fees and costs

incurred in connection with the supplemental depositions Herlan and Wilson.


**Motions for Partial Summary Judgment &
Relief from Unanswered Admissions**


The plaintiffs seek partial summary judgment with respect to their claims against

defendant Top Line Restaurants, Inc.  for liability and damages.  Further, the plaintiffs seek

summary judgment with respect to the defendants' affirmative defenses. (Docket No. 45).


Standard for Summary Judgment

Summary judgment is appropriate where there are no issues of material fact in dispute,

and the moving party is entitled to judgment as a matter of law.  See Trans Port, Inc. v. Starter

Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Maffucci, 923 F.2d 979, 982

(2d Cir. 1991).  The Court must draw all reasonable inferences in favor of the non-moving party

and grant summary judgment only if no reasonable trier of fact could find in favor of the non-

moving party.  See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); Howley v. Town of

Stratford, 217 F.3d 141 (2nd Cir. 2000).  However, the non-moving party must, "demonstrate to

the court the existence of a genuine issue of material fact."  Lendino v. Trans Union Credit

Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the
> governing law" and a dispute about a material fact is genuine "if
> the evidence is such that a reasonable jury could return a verdict
> for the non-moving party."

13

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise."  Trans Sport, 964 F.2d at 188 (citing Bryant v. Maffucci, 923 F.2d at 982).  If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party."  Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984).  The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them.  See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990).  However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Basis for Summary Judgment

The plaintiffs assert that no questions of fact exist as to: (a) whether Top Line Restaurants, Inc. was negligent; (b) that the negligence of Top Line was the direct and sole proximate cause of the injuries to Tatyana Adames; (c) that Jose Adames and Sally Irizarry are "immune" from liability for the injuries and damages sustained by Tatyana.  (Docket No. 47). The plaintiffs' motion is based upon the fact that the defendants have failed to respond to the plaintiffs' Request for Admissions dated January 15, 2013.  (Docket No. 46 at ¶ 11; Docket No. 47 at page 7).  The plaintiff contends that because it failed to answer the Request for Admissions,

Top Line has admitted that it owned, managed and controlled the Denny's Restaurant at the time the incident took place [Admission 2][10]; that Herlan was employed by Top Line as a food server at the time of the incident [Admissions 3 & 4]; that the plaintiffs were customers and business invitees at the time of the incident [Admission 5]; that Herlan was acting within the scope of her employment when she served the plaintiffs [Admission 6][11]; that Herlan "set a cup of coffee down on the table within reach of the infant Tatyana Adames, which the infant then grabbed and dumped the coffee on herself." [Admission 10]; that the act of Herlan setting down the coffee cup and Tatyana grabbing it and pouring the coffee on herself is depicted be the video captured by defendants' security camera [Admissions 11-13]; that the coffee caused first and second degree burns to the neck, chest and abdomen of Tatyana [Admission 14]; that Jose Adames and Sally Irizarry were positioned at the table "adjacent" to Tatyana "and were at risk that the coffee would be spilled or dumped on some part of their person." [Admission 15]; that Tatyana required hospitalization and medical care "as a result of the injuries sustained" [Admission 16]; that the medical care provided to Tatyana by various medical providers "was reasonable and necessary for the injuries" [Admission 17]; and that Tatyana "suffered permanent scarring of her neck, chest and abdomen." [Admission 18].  See Requests for Admissions (Docket No. 48-4).

Pursuant to Rule 36(a)(3), a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or

---

[10]   The first admission request sought to establish that Top Line owned or managed the Denny's Restaurant involved in this action with GB Restaurants, Inc. (Docket No. 48-4, Admission 1).  It appears that the parties agree that there is *not* common ownership of the restaurant in question between Top Line and GB. (Docket No. 56-1 at ¶ 4).

[11]   Requests for Admissions 7, 8 and 9 relate to a "Customer Incident" form and seek admissions that the form attached to the instant motion was authentic, and constituted a record created by Top Line's employees and was a record of a regularly conducted activity pursuant to Rule 803(6) of the Federal Rules of Evidence. (Docket No. 48-4, Admissions 7-9).

objection addressed to the matter and signed by the party or its attorney." Generally, it has been

held that Rule 36(a) is self-executing, and that it is unnecessary for the Court to deem a matter

admitted. <u>Brumby v. Sharinn & Lipshie, P.C.</u>, 2011 WL 6396385 (E.D.N.Y.,2011)(As to the

plaintiff's request that her requests to admit be deemed admitted based on the defendant's failure

to timely respond, such action is not necessary. Rule 36 is self-executing. If the requests were

duly served and not timely responded to, they are deemed admitted.); <u>Allstate Ins. Co. v. Howell</u>,

2010 WL 5313760 (E.D.N.Y.,2010)(A matter is admitted unless, within 30 days after being

served, the party to whom the request is directed serves on the requesting party a written answer

or objection.).   Rule 36(b) provides:

> A matter admitted under this rule is conclusively established unless
> the court, on motion, permits the admission to be withdrawn or
> amended. Subject to Rule 16(e), the court may permit withdrawal
> or amendment if it would promote the presentation of the merits of
> the action and if the court is not persuaded that it would prejudice
> the requesting party in maintaining or defending the action on the
> merits. An admission under this rule is not an admission for any
> other purpose and cannot be used against the party in any other
> proceeding.

Here, the defendants have moved for relief from the unanswered admissions pursuant to

Rule 36(b). (Docket No. 56). Under Rule 36(b), the decision to excuse the defendant from its

admissions is in the court's discretion. The court has the power to grant relief from unanswered

admissions when (1) the presentation of the merits will be aided and (2) no prejudice to the party

obtaining the admission will result.  Because the language of the Rule is permissive, the court is

not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in

favor of the party seeking exception to the rule. See <u>Moosman v. Joseph P. Blitz, Inc.</u>, 358 F.2d

686, 688 (2 Cir.1966). See <u>Garden City Boxing Club, Inc. v. Rice</u>, 2005 WL 613249, at *4

(S.D.N.Y. Mar. 14, 2005) ("Permitting a party to dispute a central issue in an action may serve

16

the presentation of the merits of an action.”); Sec. <u>Ins. Co. of Hartford v. Trustmark Ins. Co.</u>, 217

F.R.D. 296, 298 (D.Conn.2002) (“The prejudice contemplated by Rule 36(b) is not merely that

the party obtaining the admission must, as a consequence of the withdrawal, prove the matter

admitted....”).  The defendants acknowledge that many of the facts which the plaintiffs sought

admission are not in dispute: that Top Line owns the Denny’s Restaurant at which the incident

took place; that Herlan was employed by Top Line; that the plaintiffs were customers of Top

Line; that Herlan was acting within the scope of her employment when she served the plaintiffs.

(Docket No. 56-1 at ¶ 5).  The defendants contend that some of the admission requests could not

reasonably be answered at the time they were propounded because discovery had not been

completed. (Docket No. 56-1 at ¶ 6).  The defendants assert that other admission requests cannot

be admitted or denied, but require modified responses. (Docket No. 56-1 at ¶¶7-10).  The

defendants contend that admission request No. 15 – relating to where the parents were situated at

the time of the incident– “ is still incapable of an admission, a denial or modification.” (Docket

No. 56-1 at ¶ 11).  The defendants also argue that whether the costs of the care and treatment

rendered to Tatyana “was reasonable and necessary” is a determination for the trier of fact.

(Docket No. 56-1 at ¶ 10).  Finally, the defendants dispute the plaintiffs’ contention that Jose

Adames and Sally Irizarry were in a “zone of danger” and that Herlan’s actions were the

proximate cause of the parent’s fear that they were at risk of having coffee spilled on them.

(Docket No. 56-1 at ¶¶ 17-19).  The defendants note that as she was serving the plaintiffs, the

plaintiffs requested that Herlan take a picture of the family for them.  Herlan agreed to take the

picture after she put the coffee down on the table. (Docket No. 56-1 at ¶ 18).

In response to the defendants’ motion for relief from the unanswered admissions,

reiterates that many of the requested admissions are not in dispute and that Herlan placed hot

coffee within reach of Tatyana. The plaintiffs argue that it is immaterial that Herlan was asked to take a picture of the family. With respect to the fact that the defendants appear willing to admit that Irizarry was "adjacent" to Tatyana, the plaintiffs acknowledge that Jose Adames was "farther from his daughter than his wife." (Docket No. 58-1 at ¶¶ 13).  The plaintiffs also assert that the defendants have not provided the Court with a sufficient reason to grant relief from the unanswered admissions. (Docket No. 58-1 at ¶ 19).

While the defendants should have interposed some type of timely response to the plaintiffs' request for admissions (i.e. a denial of the requests pending the results of discovery), it appears that, at least as to some of the admission requests, further discovery was needed to prior to making an informed decision as to validity of the admission requests. Significantly, with respect to the standard for granting relief under Rule 36(b) discussed above, it appears, that allowing the defendants to substitute a response to the unanswered admissions would aid in the presentation of the merits of the claims particularly with respect to the claims asserted by Jose Adames and Sally Irizarry. The plaintiffs have not demonstrated that they would be prejudiced by allowing the defendants relief from the unanswered admissions.  Thus, it is recommended that the defendants' motion for relief from the unanswered admissions be granted; and that the defendants be directed to serve answers to the plaintiff's request for admissions within 30 days of the date of the adoption of this Report & Recommendation. In light of the above, it is further recommended that the plaintiffs' motion for summary judgment be denied without prejudice to be re-filed, if appropriate, after the filing of the defendants' answers to the plaintiff's request for admissions so that the Court can determine all aspects of such a motion based upon a full and complete record.

### Conclusion

Based on the foregoing, it is recommended that the plaintiffs' motion to strike (Docket No. 15) be DENIED; the plaintiffs' motion for summary judgment (Docket No. 45) be DENIED WITHOUT PREJUDICE; and defendants' motion for relief from unanswered admissions (Docket No. 56) be GRANTED.  It is ORDERED, that the plaintiffs' motions for sanctions (Docket No. 43 & 61) is GRANTED IN PART AND DENIED IN PART consistent with the above.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y.  Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y.  Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott

United States Magistrate Judge
Western District of New York

Buffalo, New York
January 16, 2014

20