UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Jose Adames et al.,

                       Plaintiff,                  **Hon. Hugh B. Scott**

                                                             12CV569[1]

                          v.                                                     **Decision**
                                                                               **&**
                                                                              **Order**

G.B.Restaurants Inc. et al. ,

                       Defendant.

_____

       Before the Court is the defendants' in limine motion (Docket No. 82)

**Background**

       The plaintiffs, Jose Adames and Sally Irizarry bring this action individually and as parents of Tatyana Adames (referred to collectively as "Adames") seeking damages relating to the personal injuries allegedly suffered by Tatyana (an infant) when a cup of coffee was spilled on her at the Denny's Restaurant located in Angola, New York. Named as defendants are G. B. Restaurants, Inc. ("G.B.") and Top Line Restaurants, Inc. ("Top Line"). The plaintiffs allege that Tatyana's injuries were due to the negligence of the defendants' employees. (Docket No. 1 [Count 1]). Jose Adames and Sally Irizarry also assert that they have also been injured due to the

_____

   [1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket No. 76).

negligence of the defendants' employee in that, (a) they have been forced to incur expenses to deal with the medical care of Tatyana; (b) they have and will suffer great emotional injury as a result of being in the zone of danger and watching the injury to Tatyana; and (c) they have and will continue to suffer the loss of their daughter's services. (Docket No. 1 [Count 2]).

## Motion in Limine

The defendants have filed a motion in limine seeking to limit the introduction of certain evidence and to preclude the plaintiffs from suggesting a specific amount for the award of non-economic damages.  (Docket No. 82-1 at pages 3-7).[2] The defendants also raise certain "housekeeping" issues relating to the conduct of the trial. (Docket No. 82-1 at page 7).

**Special Damages** – The defendants anticipate that the plaintiff will present evidence that the plaintiff will have to have special clothing and medical appointments – in particular, psychological care – at least until she is 21 and perhaps for the remainder of her life. The defendants contend that the need for the clothing and medical appointments has not been recommended by any medical professional. Thus, the defendants contend that these alleged damages are speculative at best, and therefore these claims should not be part of the calculation of damages presented to the jury.  (Docket No. 82-1 at pages 3-4). The plaintiffs respond that the reports from their medical expert, Dr. Gerald D. Garcia,  support the claim for protective clothing and sunscreens.  As to the need for future psychological care, the plaintiffs argue that it is "not

---

[2]   The defendants also raised an issue relating to the production of recent photographs taken of Tatyana. (Docket No. 82-1 at page 2).  During the pretrial conference in this matter on September 17, 2014, the parties advised the Court that these photographs have been produced. This issue is moot.

beyond the ken" of jurors to appreciate that a child with hypopigmentation as a result of burns may require counseling as she matures to deal with how the injury impacts her daily living. (Docket No. 83 at pages 4-6).

The parties do not dispute that the law precludes the jury from speculating as to the amount of economic damages. (Docket No. 83 at ¶ 12). In light of the disagreement between the parties as to whether the medical evidence to be introduced by the plaintiff will support such claims for damages, the Court will reserve decision as to whether the jury will be permitted to consider such damages.

**Parents' Claim for Negligent Infliction of Emotional Distress** – The defendants argue that any claim by Tatyana's parents of being in imminent fear and danger of being burned is misplaced because the parents were not paying attention to the infant, and did not see the infant pull the coffee upon her until it was too late. (Docket No. 82-1 at page 4). The plaintiffs argue that this is an untimely motion for summary judgment by the defendants. The plaintiff's also deny that they need to demonstrate evidence of the scope and extent of their emotional trauma aside from the empathy that one must feel when seeing a loved one injured; the defendants contend that they were in the zone of danger because they were sitting at the same table; mother was actually burned by the coffee. (Docket No. 83 at pages 7-9).

Generally, under New York common law, claims for negligent infliction of emotional distress are subject to the "zone of danger" test, which allows a plaintiff to recover for emotional injury caused by fear of physical injury only if the plaintiff was within the zone of danger of physical impact. Higgins v. Metro-North R. Co., 318 F.3d 422 (2d. Cir. 2003). The Supreme Court has adopted the "zone of danger" test, limiting recovery to those plaintiffs who: (1) sustain

a physical impact as a result of a defendant's negligent conduct; or (2) are placed in immediate risk of physical harm by that conduct.  See Consolidated Rail v. Gottshall, 512 U.S. 532,  547-48, 554 (1994); Harrington v. Pinkerton's Inc., 39 Fed.Appx. 655 (2d. Cir. 2002).  As long as the plaintiff was in the zone of danger, it is not necessary that the plaintiff suffer contemporaneous or consequential physical injury.  See Armstrong ex rel. Armstrong v. Brookdale University Hospital and Medical Center, 425 F.3d 126 (2d. Cir. 2005)(Absent contemporaneous or consequential physical injury, New York courts are reluctant to permit recovery for negligently caused psychological trauma, where trauma produces only ensuing emotional harm. ...  However, if a defendant owes a duty directly to the plaintiff, she may recover for emotional harm flowing directly from that breach. ...  A duty, in turn, exists when the psychological trauma suffered is within the "orbit of the danger and therefore within the orbit of the duty for the breach of which a wrongdoer may be held liable").  A plaintiff was in the zone of danger if the defendant breached "a duty owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety.".  El-Hanafi v. United States,  2014 WL 4199643 (S.D.N.Y.,2014) citing Daluise v. Sottile, 40 A.D.3d 801, 837 N.Y.S.2d 175, 178 (2007).  See also Steinsnyder v. United States, 2013 WL 1209099 (E.D.N.Y.,2013)(where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family). Thus, in order for the plaintiffs to establish a negligent infliction of emotional distress claim, they must (1) have been exposed to an unreasonable risk of bodily injury or death within the "zone of danger," (2) have contemporaneously observed a family member's injury, and (3) have suffered emotional distress as a result. Steinsnyder, 2013 WL 1209099 at *3 citing

Bovsun v. Sanperi, 61 N.Y.2d 219, 230–31, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984). Further, the plaintiffs must present evidence that the emotional distress they allegedly suffered was "severe". Jackson v. City of New York, 939 F.Supp.2d 219, 234 (E.D.N.Y.,2013) ("Plaintiff fails to establish any 'severe emotional distress,' as required to show either intentional or negligent infliction of emotional distress. Apart from bare and conclusory assertions that she suffered "psychological and emotional trauma," and "mental ... injuries," Plaintiff has not introduced any evidence tending to show she suffered any emotional distress.). See also Vumbaca v. Terminal One Group Ass'n L.P., 859 F.Supp.2d 343 (E.D.N.Y.,2012)("In absence of special circumstances, psychiatric testimony may suffice for 'guarantee of genuineness' required to sustain negligent infliction of emotional distress claim under New York law, however, a plaintiff's uncorroborated testimony of upsetness will not.").

      Based upon the record before the Court, questions of fact exist as to: (a) whether Tatyana's parents were within the zone of danger at the time of the incident and (b) whether Tatyana's parents suffered emotional distress sufficiently severe to support a claim for the negligent infliction of emotional distress.  If such questions cannot be resolved as a matter of law upon the completion of the plaintiffs' case, they are to be submitted to the jury for determination.

      **Anchoring –** The defendants seek to preclude the plaintiffs from suggesting a specific amount to the jury as damages for non-economic injuries in this case.  The defendants point to research which concludes that the suggestion of a specific amount for non-economic damages to the jury, leads to anchoring – a phenomenon in which an individual's bias is influenced by arbitrary and irrelevant numbers.  The defendants assert that the process has been outright banned by the Third Circuit and criticized by the Second Circuit in Consorti v. Armstrong World

Industries, Inc., 72 F.3d. 1003 (2d. Cir. 1995).  The plaintiffs argue that they should be allowed to suggest a specific amount as provided for in C.P.L.R. 4016(b), which provides:

> In any action to recover damages for personal injuries or wrongful death, the attorney for a party shall be permitted to make reference, during closing statement, to a specific dollar amount that the attorney believes to be appropriate compensation for any element of damage that is sought to be recovered in the action. In the event that an attorney makes such a reference in an action being tried by a jury, the court shall, upon the request of any party, during the court's instructions to the jury at the conclusion of all closing statements, instruct the jury that:
>
> (1) the attorney's reference to such specific dollar amount is permitted as argument;
>
> (2) the attorney's reference to a specific dollar amount is not evidence and should not be considered by the jury as evidence; and
>
> (3) the determination of damages is solely for the jury to decide.

The Court notes that the Second Circuit in Consorti did not preclude the practice of anchoring, and in a subsequent case, Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d. Cir. 1997), the Second Circuit stated that it favored "a flexible approach" in which it is "left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." Lightfoot, 110 F.3d at 912.  Contrary of the defendants' argument, it does not appear that the trend has been toward the banning of plaintiffs from requesting specific amounts of non-economic damages. As noted by the First Circuit, such outright bans are not favored by most circuits.  Rodriguez v. Senor Frog's de la Isla, Inc., 642 F.3d 28, 38 n.3 (1st Cir. 2011)("On this issue ... our outright ban is clearly out of step with the prevailing federal practice. The Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits leave it to district judges to decide whether and how lawyers may discuss

pain-and-suffering damages with juries.).  Indeed, the defendants have not cited a case since 1995 precluding the plaintiffs from making such a request. While not binding on the Court in this case, it is noted that the practice is still expressly permitted under New York law. Under the facts present in this case, inasmuch as the practice is not precluded under the applicable federal law, the Court will not preclude the plaintiffs from suggesting an amount for non-economic damages to the jury in this matter.

**Housekeeping Issues** – The defendants have presented several housekeeping issues relating to the conduct of the trial. (Docket No. 82-1 at pages 7-11). The plaintiffs challenge only No. 3 and No. 12.

Housekeeping Item No. 3, as proposed by the defendants seeks to preclude the parties from "[m]entioning, referencing or inferring anything which might tend to inform the jury of the effect of their answers to the questions posed in the jury charge, including any comments to the effect that certain questions must be answered in a certain way for justice to be done, or that if questions are not answered in a certain way that no recovery would be had." (Docket No. 82-1 at page 8).  The parties appear to agree that they should not suggest to the jury that a question should be answered in a certain way based upon considerations of "justice" as opposed to the evidence introduced in the case.  However, the plaintiffs have suggested that they desire to discuss the Jury Verdict Questionnaire question by question with the jury during closing.  It is the Court's province to explain the Jury Verdict Questionnaire to the jury.  Prior to closing arguments, the Court will confer with counsel regarding the parties intentions to refer to the Jury Verdict Questionaire during their respective arguments.

Housekeeping Item No. 12, as proposed by the defendants, seeks to preclude the plaintiffs

from making any mention of the defendants's objections to discovery requests, failure to produce discovery, or the fact that the Court compelled discovery in this matter. The plaintiff shall not mention or refer to such facts unless first making a proffer to the Court demonstrating the relevance and probative value of such facts.

    So Ordered.

                                          */s/ Hugh B. Scott*
                                     United States Magistrate Judge
                                     Western District of New York

Buffalo, New York
September 24, 2014